# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA SWENTKO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. ) | 2:07cv280<br>**Electronic Filing** |

## MEMORANDUM OPINION

July 21, 2008

### I. INTRODUCTION

Plaintiff, Debra Swentko ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. The parties have filed cross motions for summary judgment, and the record has been developed at the administrative level.

### II. PROCEDURAL HISTORY

Plaintiff filed an application for DIB benefits on April 1, 2005, alleging disability since January 10, 2005, due to a below-the-elbow amputation of her right arm consequent to an automobile accident. R. 46-49, 61. Plaintiff's claim was initially denied, and she filed a timely request for an administrative hearing. R. 33-37. Before the hearing took place, Plaintiff amended her disability claim to include depression and anxiety as additional impairments affecting her ability to engage in regular work activity. R. 89. A hearing was held on July 7, 2006, in Morgantown, West Virginia, before Administrative Law Judge Norma Cannon ("ALJ"). R. 12, 224-53. Plaintiff was represented by counsel, Joseph George, plaintiff's husband, Andy Swentko, was present as an observer, and Vocational Expert ("VE"), Larry Bell, also appeared and testified. R. 224-253. The ALJ issued an unfavorable decision on September 11, 2006, finding that the Plaintiff was "not disabled" within the meaning of the Social Security Act. R. 12-20. The ALJ's decision became the Commissioner's final decision when, on January 9, 2007,

the Appeals Council denied Plaintiff's request for review. R. 4-6.  The instant action now seeks review of the Commissioner's final decision, and the matter is before this court on the cross-motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**III.    STATEMENT OF THE CASE**

Plaintiff was born on June 20, 1957. R. 19, 31, 46, 57, 229.  She is currently fifty (50) years old, making her forty-seven (47) years old at the time of application for DIB benefits and forty-nine (49) years old at the time of the administrative hearing. *Id*.  Under the Commissioner's regulations, applicants under the age of 50 are considered "younger individuals" and their age is not considered a significant impediment to adapting to new work situations. 20 CFR § 416.963. Individuals age 50-54 are considered persons "closely approaching advanced age" and their age is considered together with severe impairments and limited work experience in determining the applicant's ability to adjust to other work. *Id*.  The Commissioner uses each age category that applies during the period for which a determination must be made as to whether or not an individual is disabled. *Id*.  In the present case, the period for which a disability determination must be made is from January 10, 2005, the alleged disability onset date, until September 11, 2006, the date of the ALJ's decision, which became the final decision of the Commissioner by act of the Appeals Council on January 9, 2007.  Thus, Plaintiff was less than fifty years old during the entirety of the relevant period, a "younger person" according to the Commissioner's regulations, and her age is not a significant factor in her ability to acclimate to unfamiliar occupational circumstances.

On January 10, 2005, Plaintiff was an unwilling and unfortunate participant in a horrific automobile accident during which she suffered a severe degloving injury resulting in the amputation of her dominant right arm below the elbow. R. 99-104.  Plaintiff subsequently underwent a split-thickness skin graft procedure. R. 156-57.  Beginning March 4, 2005, until May 11, 2005, Plaintiff regularly attended physical therapy sessions. R. 159-85.  Plaintiff was fitted for and provided with a prosthesis, but she did not like it and chose not to use it. R. 159-85, 231-32.  On June 9, 2005, Plaintiff tolerated an injection and manipulation of her right shoulder due to significant pain and loss of motion in that joint. R. 187-89.

On July 27, 2005, Plaintiff sought counseling from Jacquelyn Albert, LCSW, presenting with severe anxiety and moderate depression persisting over the preceding several months. R. 215-17. The severity of Plaintiff's presenting problem was indicated as "disabling." R. 215. The recommended treatment for Plaintiff was weekly individual therapy sessions. R. 217. The record contains reports from Plaintiff's individual therapy sessions beginning August 3, 2005 and continuing until November 15, 2005. R. 206-14. From the initial evaluation through the final report in the record, Plaintiff's global assessment of functioning ("GAF") was consistently rated between 55 and 60.[1] R. 206-17. The session notes from Plaintiff's therapy reveal Plaintiff's mental and emotional struggle to cope with life after the accident, but also indicate an improvement over the course of the sessions, culminating in the notation in the final report that Plaintiff recognizes her progress and can reduce her therapy sessions. R. 206-14. Although there are no reports of Plaintiff's therapy after November 15, 2005, contained in the record, Plaintiff indicated in her testimony that she continues to see her therapist when necessary. R. 245. Plaintiff further testified that she had been taking Paxil for her depression. R. 236-37, 240.

According to a questionnaire completed by Plaintiff and Plaintiff's testimony, her impairments have had a limiting effect on nearly all of her activities of daily living, including her ability to do housework, shop, write, drive, shower and dress. R. 74-81, 234-36. Although Plaintiff does not go out to socialize, she does visit with family in her home, and she attends church. R. 235-36.

At the administrative hearing, the testimony of the VE indicated that a hypothetical individual sharing Plaintiff's restrictions and limitations could perform work existing in the national economy as a ticket taker or a parking booth attendant. R. 247-48.

---

[1] The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) (4th ed. 2000). A score between 51 and 60 indicates some moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g. few friends, conflicts with peers or co-workers). *Id.*

After determining that Plaintiff had met the insured status requirements of the Act through December 31, 2009, and that Plaintiff had not engaged in substantial gainful activity since her protective filing, the ALJ found Plaintiff's below-the-elbow right arm amputation to be a severe impairment within the meaning of the Regulations, but did not meet or medically equal, either singly or combination with other alleged impairments, any of the listings in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). R. 14-16. The ALJ further found that Plaintiff's depression and anxiety did not enjoy the support of sufficient objective medical evidence in the record, and were therefore determined to be non-severe. *Id*. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC")[2] to engage in work activity at the light exertional level subject to certain modifications, which, in the main, allow for limitations corollary to the amputation of Plaintiff's dominant right arm. R. 16-19. Ultimately, the ALJ concluded that, although Plaintiff was unable to return to her past relevant work as a nurse's aide, a significant number of jobs existed in the national economy that Plaintiff could perform, considering her age, education, work experience and RFC, and therefore Plaintiff was not disabled within the meaning of the Act at any time relevant to the rendering of the ALJ's decision. R. 19-20.

## IV. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

---

[2]Residual functional capacity is "what [the claimant] can still do despite [her] limitations." 20 CFR § 416.945(a).

4

support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents (her) from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 USC § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if (her) physical or mental impairment or impairments are of such severity that (she) is not only unable to do (her) previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 USC § 423(d)(2)(A). To support his ultimate findings, an ALJ must do more than state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 USC § 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 CFR] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c),

5

416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimants age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).
*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

## V. DISCUSSION

Plaintiff's arguments that the ALJ's determination merits remand by this Court are predicated, *in toto*, on the ALJ's findings with respect to Plaintiff's mental impairments. Accordingly, the ALJ's findings with respect to her physical impairments will be left undisturbed, and will form no basis for the *ratio decidendi* here. Although Plaintiff's assignments of error to the ALJ's decision are multitudinous, they are all derivative of the same salient particular: that the ALJ erred in determining that Plaintiff's mental impairments were not severe. First, Plaintiff asserts that the ALJ erred in finding that Plaintiff's mental impairments are non-severe, arguing that such a finding is inconsistent with the Regulations and long standing case law that only "groundless claims" are to be considered non-severe. Second, Plaintiff contends that the ALJ's findings as to her mental impairments are belied by evidence in the record and Plaintiff's testimony. Third, Plaintiff argues that the ALJ's decision regarding Plaintiff's mental impairments was founded upon the absence of a consultative examination, a failure to satisfactorily determine the frequency of Plaintiff's counseling treatment, and a lack of consideration for Plaintiff's work history in making a credibility determination, all of which, according to Plaintiff, diminishes the validity of the ALJ's determination that these impairments were not severe. Finally, and as a result of the errors specified in the preceding sentences, Plaintiff urges that the ALJ failed to adequately advance an appropriate hypothetical question to

6

the VE accurately incorporating all of Plaintiff's individual impairments and limitations, which should include accommodation for depression and anxiety.

Plaintiff's first argument is that the ALJ erred in finding that Plaintiff's mental impairments were not severe at step two of the sequential evaluation, discussed above. Plaintiff argues that the severe impairment determination is a *de minimis* standard that is only designed to eliminate "groundless claims." Plaintiff maintains that an impairment is only non-severe when its effect on an individual's ability to work is minimal or non-existent. Plaintiff further stresses that a determination that an impairment is not severe should rarely be used as a basis for denying benefits and that reasonable doubts as to severity should be resolved in the claimant's favor. Plaintiff contends that a decision that an impairment is not severe at this step should be reviewed with close scrutiny.

Plaintiff's argument, although true, is irrelevant in this case. The Regulations and the case law address the situation where benefits are denied at step two because an impairment is determined to be non-severe. Plaintiff's case, however, is readily distinguishable for the obvious reason that benefits were denied at step five of the sequential evaluation process, not at step two. The ALJ did find that Plaintiff had the severe impairment of right arm amputation at step two, but found that Plaintiff's allegations of mental impairment lacked sufficient evidentiary support to be considered severe. The ALJ then thoroughly conducted the remaining steps of the evaluation process in reaching a determination that Plaintiff is not entitled to the benefits she seeks. This is fully in accordance with the Regulations and applicable case law. Although a finding that an impairment is not severe at step two resulting in a denial of benefits at that stage "is certain to raise a judicial eyebrow,"[3] merely finding that an alleged impairment lacks sufficient severity to be considered synchronously with other severe impairments in reaching a decision is not subject to the same level of lucubration, and the normal deferential standard applies. "The physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work." *Bowen*

---

[3]*McCrea v. Commissioner*, 370 F.3d 357, 361(3d Cir. 2004).

*v. Yuckert*, 482 U.S. 137, 147 (1987)(citations omitted). Plaintiff bears the burden of proving her impairments are sufficiently severe to satisfy the standard. See *Id*. at 146 n. 5. This Plaintiff has failed to do. The notes from Plaintiff's counseling sessions fail to indicate that Plaintiff's mental impairments significantly limit her ability to perform basic work activities by, *inter alia*, affecting her capacity to understand, carry out and remember simple instructions, use judgment, respond appropriately to supervision, co-workers and usual work situations or deal with changes in a routine work setting. 20 CFR § 404.1521(b)(3)-(6). The ALJ's findings on this point, therefore, will not be disturbed on this appeal.

      Plaintiff next argues that the ALJ's findings with respect to her mental impairments are inconsistent with the substantial medical evidence of record and Plaintiff's testimony. This is the frequently advanced, rarely successful argument that consists of reiterating the evidence contained in the record and insisting that a different result is warranted. The argument is rarely successful for a reason. The standard as to factual determinations is highly deferential. As has so often been stated, a district court is bound by the ALJ's findings so long as those findings are supported by substantial evidence, even if the district court would have reached a different factual conclusion. *Hartranft*, 181 F.3d at 360. The primary thrust of Plaintiff's polemic on this point is, after restating the evidence in the record pertaining to her mental impairments, that the ALJ substituted her own lay opinion for that of the medical professionals offering competent medical evidence in Plaintiff's case in reaching the conclusion that Plaintiff's mental impairments are not severe. The Court finds this position problematic for two reasons. First, a critical reading of the ALJ's decision reveals that the ALJ did conduct a thorough review of the evidence in reaching her conclusion and that the ALJ provided a comprehensive analysis of the evidence in making her determination. Second, the evidence Plaintiff points to as support for her position focuses upon her mental condition during her initial evaluation with her treating therapist and carefully selected excerpts from the continuing therapy notes, but completely fails to mention the indication of progress that the therapy notes disclose, ultimately resulting in Plaintiff's acknowledgment of her improvement and agreement that her therapy sessions could be reduced. As further support, Plaintiff offers a report from her primary care physician in which

8

the doctor, by way of checking a box on the form, determined that Plaintiff was totally disabled from all occupations. Plaintiff, however, fails to recognize that these types of check-the-box reports, even when completed by a primary care physician, are entitled to less evidentiary weight than other substantive medical evidence. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). Furthermore, a treating physician's opinion that a claimant is "disabled" or "unable to work" is not dispositive or entitled to special deference. See *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); 20 CFR §§ 404.1527(e), 416.927(e). Disability determinations are the province of the ALJ. 20 CFR § 404.1527(d)(2), 416.927(d)(2). Additionally, the Court finds that the ALJ did appropriately consider Plaintiff's testimony in making the determination that Plaintiff's mental impairments were not severe as defined by the Act. Despite Plaintiff's insistence that the evidence mandates reaching the antipodean result, this Court does not find the ALJ's decision to lack the support of substantial evidence. Nor can it be said that the result is unreasonable.

Plaintiff next avers that the ALJ erred in citing the absence of a consultative examination as a basis for denying benefits, in failing to accurately determine the frequency of Plaintiff's therapy sessions, and in failing to consider Plaintiff's work history in making a credibility determination with respect to Plaintiff's testimony.

As to Plaintiff's assignment of error that the ALJ improperly relied on the absence of a consultative examination as a basis for denying benefits, the Court finds that Plaintiff has either misunderstood or mischaracterized the portion of the ALJ's decision that addresses the consultative exam. The consultative exam is mentioned in a single sentence in a nine page decision. Specifically, the ALJ states, "As the claimant did not allege depression and anxiety at the time of the initial determination by the state agency, no evaluation was performed." R. 15. It occurs to this Court that the ALJ's statement relating to the consultative exam is more of an observation, simply noting that the exam was not performed to explain the absence of its report in the record, in keeping with the established precedent that an ALJ document its analysis and discuss all of the evidence. See *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983); *Cotter v.*

9

*Harris*, 642 F.2d 700, 704, 705 (3d Cir. 1981). Because reports of consultative examinations are fairly commonplace in social security proceedings, the ALJ may have simply pointed out its absence so it did not appear as though it had been overlooked. Be that the case, or be it for some other reason, however, this Court is not persuaded that any reasonable reading of the statement is indicative of reliance on the absence of the report as a basis for finding Plaintiff's mental impairments to be non-severe. In fact, the remainder of the paragraph in which that sentence appears does provide the foundation on which the ALJ's conclusion rests:

> The undersigned has evaluated the claimant's depression and anxiety under Sections 12.04 and 12.06 of Appendix 1, dealing with affective disorders and anxiety-related disorders respectively. The undersigned finds that the functional limitations associated with these conditions, when evaluated under the "B" and "C" criteria, are not of a level of severity to establish the presence of a severe impairment. (20 CFR 404.1520a(d)(1)).

R. 15.

Thus, Plaintiff's argument that the ALJ improperly relied on the want of a consultative examination when the ALJ had the obligation to obtain one were it necessary must consequently fail. Plaintiff is correct that an ALJ's duty to develop the record includes ordering a consultative examination in cases where the medical records are incomplete. The accident of that fact in this case, however, is of no moment. The ALJ kept the record open for an additional period beyond the hearing date in order to allow Plaintiff to supplement the record with evidence of her mental impairments. Plaintiff did so. It is upon these records that the ALJ relied in making a determination that Plaintiff's mental impairments were not severe. A consultative examination was unnecessary because the medical records were complete as to Plaintiff's mental condition. Indeed, the Regulations make clear that a consultative examination will only be ordered when sufficient medical evidence is not available from a claimant's existing medical sources. *See* 20 CFR §§ 404.1512(f), 404.1517, 404.1519, 404.1519a-404.1519f. That is not the case here.

Regarding the ALJ's alleged failure to determine the frequency of Plaintiff's treatment for her mental impairments, the Court finds that this argument lacks merit. Plaintiff takes issue with the ALJ's finding that Plaintiff saw her counselor on an as-needed basis based on Plaintiff's

testimony at the administrative hearing that she saw her counselor "whenever I need to call her and talk with her." Plaintiff attempts to characterize this response as vague. The response, however, is not vague, though it may be inexact. The Court can not say, though, that based on this response, a characterization of Plaintiff's treatment as "as-needed" constituted error. Indeed, it is difficult to think of another term to more accurately describe it.

With respect to the ALJ's supposed lack of consideration for Plaintiff's work history in making an adverse credibility determination contemplating Plaintiff's testimony, Plaintiff's argument overlooks one important detail. The ALJ's credibility assessment appertained to Plaintiff's testimony regarding the limiting effects of her physical impairments, and did nothing to advise the ALJ's finding on her mental infirmities. As Plaintiff does not challenge the ALJ's findings with respect to her physical limitations, this argument is misplaced and, thus, must necessarily fail.

Finally, Plaintiff contends that the sum of the errors particularized above occasioned the validity of the hypothetical question to the VE to be compromised. Because the Court finds that the ALJ did not err in finding that Plaintiff's mental impairments are not disabling, the Court need not address Plaintiff's allegation of error regarding the manner in which the ALJ styled the hypothetical questions to the VE.

**VI. CONCLUSION**

For all of the foregoing, the decision of the ALJ is affirmed, and the Commissioner's motion is granted. Plaintiff's motion is denied. An appropriate order shall issue.

                                                s/ David Stewart Cercone
                                                David Stewart Cercone
                                                United States District Judge

cc:    Karl E. Osterhout, Esquire
        1789 South Braddock Avenue, Suite 570
        Pittsburgh, Pennsylvania 15218

Jessica Lieber Smolar
Assistant U.S. Attorney
Western District of Pennsylvania
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219